310 So.2d 128 (1975)
James ANDERSON
v.
Anthony V. SCIAMBRA and Manchester Insurance and Indemnity Company.
No. 6726.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1975.
Rehearing Denied April 15, 1975.
Writ Refused June 20, 1975.
*130 Robert F. Pitard, Pitard, Pitard & Porobil, New Orleans, for plaintiff-appellant.
Michael A. Dessommes, Nelson, Nelson, Garretson, Lombard & Rothschild, New Orleans, for defendants-appellees.
John H. Hammel, Jr., New Orleans, for defendant-appellee, Theresa Baudier.
Before SAMUEL, REDMANN and MORIAL, JJ.
REDMANN, Judge.
Plaintiff, injured in a December 25, 1971 fall from a rear gallery at his apartment, sued on May 25, 1972 the man he knew as his landlord and that man's insurer. By amended answer of June 7, 1973 (after the one-year prescription had run), those defendants disclosed that the one-time landlord had donated the building to his daughter by act recorded January 26, 1971 (11 months before the accident and nine months before the term of the owners', landlords' and tenants' liability policy began). Added as a defendant by supplemental petition of June 20, 1973, the daughter pleaded prescription. Plaintiff now appeals from a judgment on the merits which dismissed the daughter as released by prescription and the former landlord and the insurer as not liable. We reverse as to the insurer and, to the extent only of the limits of the insurer's liability, as to the daughter.
Defendant Sciambra and his wife owned the apartment building for a period of years. They owned no other rental property. This building was the only premises covered by the insurance policy.
Plaintiff notes that an "Alienated Premises" clause in the policy provides that the insurance "applies to premises alienated by the named insured, if the accident occurs after the named insured has relinquished possession thereof to others." However, this wording does not make the new owner an insured, and it is only the "insured" on whose behalf the insurer is obliged to discharge liability.
Plaintiff also argues that, despite the donation to the daughter, the parents remained owners or co-owners. The evidence shows that the family did not adhere to business practices in handling each other's funds, and that they gave no indication to tenants of the donation. But these circumstances do not suffice to make the donation to the daughter even questionable, much less ineffective.
We conclude, however, that at the time the parents purchased the liability policy on the daughter's apartment building, they were acting in her interest and cannot have intended any other purpose than to procure appropriate insurance against the daughter-owner's liability, and that the insurer *131 intended no other purpose than to sell insurance against the owner's liability. Accordingly the naming of the parents as the insured was a mutual mistake, and we will treat the policy as reformed to name the daughter as the insured. See Herbert v. Breaux, La.App.1973, 285 So.2d 829.
Therefore, if the daughter would have been liable as landlord for plaintiff's damages at the time of filing the original petition, the insurer is liable (within policy limits).
Since the daughter would have been liable in solido with the insurer, Pearson v. Hartford Acc. & Indem. Co., La. 1973, 281 So.2d 724 (see Note, 1974, 20 Loyola L.Rev. 367), suit against the insurer interrupted prescription running in the daughter's favor, C.C. art. 2097. However, because the insurer's liability is limited to $5,000, the solidarity can only exist to the extent of $5,000 and prescription against the daughter is only interrupted as to that solidary portion of her obligation. An interruption on any part of a cause of action against a named defendant interrupts prescription on the entire cause of action against that defendant because of R.S. 9:5801; National Sur. Corp. v. Standard Acc. Ins. Corp., 1965, 247 La. 905, 175 So. 2d 263. But R.S. 9:5801 does not interrupt prescription on the entire cause of action against a possible defendant who is not named in the timely suit; Majesty v. Comet-Mercury-Ford Co. of Lorain, Mich., La. 1974, 296 So.2d 271. The daughter here was not named in the suit within the prescriptive period, and therefore any obligation she had to plaintiff is prescribed except insofar as the obligation was solidary with the obligation of a named defendant and thereforeto that extent onlysaved from prescription by C.C. art. 2097.
The dismissal of the father, we here note, was correct because he was no longer the landlord at the time of the accident and therefore was not liable as landlord under C.C. art. 2695. Nor was he liable as apparent landlord (or as undisclosed agent of the landlord), since his appearance of continuing to be landlord did not "cause," C.C. art. 2315, plaintiff's injuries.
The fall occurred Christmas morning from a second-story porch, as plaintiff was turning away from the door of an adjoining apartment where he had gone to extend holiday greetings. In turning he evidently lost his balance and fell against the porch railing. That railing, with all of its fence-like vertical boards, gave way and plaintiff fell with it to the ground.
C.C. art. 2695 provides the basic law:
"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
The purpose of the porch railing and vertical members was to protect against one's accidentally (as by negligence) falling off the porch. The defective condition prevented the railing from being used for its purpose, and damages resulted to the lessee from the defect. The lessor is liable, unless defendants' theory of contributory negligence would apply to negate liability.
Defendants argue that plaintiff knew of the defective condition. Photographs show that the outer edge of the porch flooring at one corner was visibly rotted.
But it is established that mere knowledge of defects (assuming plaintiff knew the railing was defective) does not defeat recovery; Boutte v. New Orleans Term. Co., 1916, 139 La. 945, 72 So. 513; Wilson v. Virgademo, La.App.1972, 258 So.2d 572; Revon v. American Guarantee *132 & Liab. Ins. Co., La.App.1973, 285 So.2d 354 (amended 296 So.2d 257). Our plaintiff's fall against the railing was not "deliberate" (Boutte, 72 So. at 514), nor was his use of the porch "foolhardy" (Revon, 285 So.2d at 358). His action does not bar his recovery.
Plaintiff's principal treating physician diagnosed a moderate strain of the neck and lower back, which was treated over a three-month period with analgesics, muscle relaxants, a lumbo-sacral support, and physical therapy. That physician discharged plaintiff April 1 with the "anticipat[ion] he may have a recurrence of minor pain at the injury sites." Plaintiff testified that he continued to experience pain and to wear his lumbo-sacral support up until time of trial. About six months after the accident a neurosurgeon found, from an electroencephalogram, a localized disturbance in the right frontal and temporal regions of plaintiff's brain. This disturbance is possibly the result of the fall, the expert testified, and might explain complaints of continuing headaches. Other physicians also saw plaintiff, and lend credence to his testimony of continuing pain in his lower back (sometimes "so great a pain, like I get blind staggers"). We conclude his injury was fairly severe and long-lasting.
Special damages included stipulated lost wages of $1,156.53. There were medical expenses of $1,011.03 (of which some are disputed). The insurer's $5,000 limit of liability (co-extensive with the owner's unprescribed liability) makes it unnecessary to decide whether only part of the medical expense is attributable to the fall. The $5,000 limit is clearly exceeded by the amount we would fix as reasonable reparation for plaintiff's injuries.
The judgment is reversed insofar as it dismissed the insurer and the daughter. There is judgment in favor of plaintiff against Manchester Insurance and Indemnity Company and Theresa Sciambra Baudier in solido for $5,000, with interest from judicial demand against Manchester and all costs, including expert fees of $100 to each of the three physicians who testified.

ON APPLICATION FOR REHEARING
PER CURIAM.
Refusing rehearing, we note that we may have erred in rejecting the concept that the father could have been liable as lessor, on the basis of breach of the contract of lease, despite the transfer of the property to his daughter; see Duplain v. Wiltz, La.App.1940, 194 So. 60, writ refused. Yet only if the father (the named insured) were thus liable could we suppose that he and the insurer intended insurance in his favor (rather than in the owner-daughter's favor). Because only the insurer has asked rehearing, we need not resolve whether it is liable because the person actually named as insured was liable (as Duplain suggests) or because the person intended to be the named insured was liable.